IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IDEDA ANTOSI, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> MG LLC d/b/a TRANZACT and PRESIDIO INTERACTIVE CORPORATION <br><br> Defendants. | Case No. <br><br><br> Complaint – Class Action |

**CLASS ACTION COMPLAINT**

Plaintiff Ideda Antosi (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

**Preliminary Statement**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

1

2. This case involves a campaign by MG LLC d/b/a Tranzact ("Tranzact"), who hired Presidio Interactive Corporation ("Presidio") to market insurance services through unsolicited pre-recorded telemarketing calls without the prior express consent of the call recipients.

3. Mr. Antosi received such calls on his residential telephone line and because these calls were transmitted using technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other persons.

### Parties

4. Plaintiff Ideda Antosi is an individual residing in this District.

5. Defendant MG LLC d/b/a Tranzact is a New Jersey company.

6. Defendant Presidio Interactive Corporation is a California corporation.

### Jurisdiction & Venue

7. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8. This Court has jurisdiction over the defendants. Tranzact regularly engages in business in this District, including obtaining business from telemarketing calls made into this District and servicing customers in this District. Furthermore, Tranzact is headquartered in this District. Presidio Interactive makes calls based on an agreement with Tranzact that directed calls into this District.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because Plaintiff is a resident of this District where he received the calls.

**The Telephone Consumer Protection Act**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

11. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice to any residential telephone number. *See* 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously

to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

15. Tranzact provides insurance services.

16. However, Tranzact utilizes third parties to generate new customers.

17. One such third party is Presidio Interactive Corp.

18. Presidio Interactive Corp. promoted Tranzact services using pre-recorded telemarketing calls.

19. At no point prior to the telemarketing calls that Plaintiff received that led to this lawsuit, did the Plaintiff seek out or solicit information regarding the insurance services promoted by Tranzact.

20. Indeed, the Plaintiff is an employee of the State of New York and has no need to shop for private insurance.

21. Plaintiff's telephone number, 718-585-XXXX is a residential landline.

22. It is used for personal, household reasons and is not associated with a business.

23. The Plaintiff's telephone number was on the National Do Not Call Registry prior to the calls placed to him.

24. Despite this, Mr. Antosi received a pre-recorded telemarketing call from Presidio Interactive on June 14 and June 26 (twice), 2021.

25. The pre-recorded message inquired if the call recipient was a certain age to qualify for insurance services and if the recipient was in need of supplemental insurance.

26. However, the company sending the message was not identified in the call.

27. In order to identify the company responsible for sending a pre-recorded message to his phone listed on the National Do Not Call Registry, the Plaintiff responded to the recorded message and sought to speak to someone on the last June 26 call.

28. Mr. Antosi spoke with an employee of Tranzact.

29. The caller advertised the insurance services of a Tranzact insurance company.

30. Mr. Antosi was not interested in the insurance solicitation, so he ended the call.

31. Mr. Antosi's counsel then contacted Tranzact regarding the illegal call.

32. Tranzact's counsel indicated that the pre-recorded call was sent by Presidio Interactive.

33. All class members, as defined below, have had their privacy invaded through receipt of the telemarketing calls.

### Tranzact Liability and its Arrangement with Presidio Interactive

34. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

35. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

36. In that ruling, the FCC instructed that sellers such as Tranzact may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

37. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing call if the telemarketer "has apparent (if not actual) authority" to make the call. 28 FCC Rcd at 6586 (¶ 34).

38. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

39. By engaging Presidio Interactive to make calls on its behalf to generate new business, Tranzact "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

40. Furthermore, Tranzact permitted Presidio Interactive the ability "to enter consumer information into the seller's sales or customer systems" when it permitted Presidio to transfer Mr. Antosi's call over to Tranzact.

41. Moreover, Tranzact maintained interim control over Presidio Interactive' actions.

42. For example, Tranzact controlled the states that it allowed Presidio Interactive to call.

43. Tranzact instructed Presidio Interactive on what type of consumer information to secure to provide the leads.

44. Tranzact also gave interim instructions to Presidio Interactive by providing the volume of calling and new customers it would purchase it would purchase.

45. Tranzact also ratified Presidio Interactive conduct by accepting the benefits of Presidio Interactive's calling activity, including the business origination of the Plaintiff's information.

46. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

47. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

48. The Class of persons Plaintiff proposes to represent is tentatively defined as:

**Presidio Class**

All persons within the United States to whom: (a) Presidio Interactive and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) using a pre-recorded message; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

**Tranzact Subclass**

All persons within the United States to whom: (a) Presidio Interactive and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) using a pre-recorded message; (d) that were made to promote the services of Tranzact; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

49. Excluded from the Class are the Defendants, and any entities in which the Defendant has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

50. The class as defined above is identifiable through phone records and phone number databases.

51. The potential class members number is likely at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

52. Plaintiff is a member of the class.

53. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Presidio Interactive made the calls at issue with a pre-recorded message as that term is defined by the TCPA;

    b. Whether Tranzact is vicariously liable for Presidio Interactive's telemarketing conduct;

    c. Whether the calls without obtaining the recipients' prior consent for the call; and

    d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

54. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

55. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

56. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

57. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves

judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

58. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
47 U.S.C. 227(b) on behalf of the Robocall Class**

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the residential telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

61. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

63. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any residential telephone numbers using an artificial or prerecorded voice in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as a representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls using pre-recorded messages to call residential telephones, except for emergency purposes, in the future.

F. An award to Plaintiff and the Class of damages, attorneys' fees and costs, as allowed by law; and

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

RESPECTFULLY SUBMITTED AND DATED this 17th day of January, 2023.

> PLAINTIFF,
> By his attorneys
>
> */s/ Edward A. Broderick*
> Edward A. Broderick (*pro hac vice application forthcoming*)
> Broderick Law, P.C.
> 176 Federal Street, Fifth Floot
> Boston, Massachusetts 02110
> Telephone: (617) 738-7080
> Facsimile: (617) 830-0327
> ted@broderick-law.com
>
> Anthony I. Paronich, (*pro hac vice application forthcoming*)
> Paronich Law, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> (508) 221-1510
> anthony@paronichlaw.com
>
> Andrew W. Heidarpour (*pro hac vice application forthcoming*)
> AHeidarpour@HLFirm.com
> HEIDARPOUR LAW FIRM, PPC
> 1300 Pennsylvania Ave. NW, 190-318
> Washington, DC 20004
> Telephone: (202) 234-2727